UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:06CV-243-H

| | |
|---|---|
| JOHN FORD, ANCILLARY ADMINISTRATOR OF THE ESTATE OF CHARLES M. JAYNE, Deceased | PLAINTIFF |
| V. | |
| RDI/CAESARS RIVERBOAT CASINO, LLC CAESARS RIVERBOAT CASINO LLC CAESARS INDIANA | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Ford is the administrator of the estate of Charles M. Jayne ("Jayne"). Jayne was killed in an accident in Floyd County, Indiana, apparently caused by the driver of another car, Carla Burkhead. At the time of the accident, Burkhead was returning from Caesars Indiana casino. Ford has filed a wrongful death lawsuit against Caesars Riverboat Casino LLC, the operator of that casino, alleging that Caesars contributed to the accident by serving Burkhead while she was intoxicated. Caesars has now filed this motion to dismiss for lack of personal jurisdiction. For the following reasons, the Court will deny that motion.

I.

On September 8, 2004, Burkhead was driving home from Caesars Indiana when she crossed the center line of State Road 111 and hit the car of Charles Jayne. Jayne sustained fatal injuries as a result of the accident. It is uncontroverted that Burkhead was intoxicated at the time of the accident, and that she had been drinking at Caesars Indiana prior to the accident. Ford filed this suit, alleging that Caesars served Burkhead alcohol when its employees knew or should

have known that she was actually or apparently under the influence of alcohol and knew there was a reasonable likelihood that upon leaving the casino she would operate a motor vehicle. Burkhead pled guilty in state court to the felony of driving while intoxicated and is serving a four year sentence. Burkhead and Jayne are both Kentucky residents.

Some part of Caesars' business is undeniably connected to and carried out in Kentucky. As Plaintiff's discovery has demonstrated, a large portion of Caesars' revenue comes from Kentucky. Various studies and reports have concluded that somewhere around fifty percent of Caesars' customers are from Kentucky. During discovery, Caesars provided forty-three pages of newspaper and billboard ads that appeared in Kentucky during the year leading up to the accident. The advertisements provided are not "exhaustive" and clearly Caesars has undertaken a comprehensive advertising campaign in Kentucky. Caesars earned at least $109 million from Kentucky residents in 2000, demonstrating the financial significance of Kentucky residents to Caesars.

Caesars is also active in Kentucky as sponsor of events and donor of charitable contributions. In the twenty-four months preceding the accident, Caesars donated $478,000 to such causes. The largest contribution by far was $400,000 to the Kentucky Derby Festival. Finally, Caesars has an active direct mail marketing campaign to Kentucky residents. Both Burkhead and Jayne received direct mail advertising from Caesars, both were regular patrons of Caesars, both were members of its Rewards Club for several years prior to the accident, and both were holder of Players Cards. In the twelve months prior to the accident, Burkhead visited the casino on average 13.5 times per month; in the same period, Jayne visited on average 1.5 times per month. Jayne's personal effects at his death included a Caesars "Certificate of Achievement"

for completing a gaming instruction course, Caesars hotel receipts, and a wide variety of Caesars merchandise, including T-shirts, a key chain, drinking mugs, an umbrella, a fanny pack, a barbeque tool set, a watch, and a hat.

In June 2006, Caesars filed a motion to dismiss for lack of personal jurisdiction. The Court has allowed limited discovery on the issue of personal jurisdiction to be conducted. This issue is now fully briefed.

## II.

Traditionally, when evaluating questions of personal jurisdiction, a federal court must apply the long-arm statute of the state in which it sits, then evaluate the case under the limits of the Due Process Clause. The plaintiff has the burden of establishing personal jurisdiction. *See Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980). Kentucky courts may employ the state's long-arm statute to exercise jurisdiction over nonresidents "only to the limits of the Constitution's due process clause." *Wright v. Sullivan Payne Co.*, 839 S.W.2d 250, 253 (Ky. 1992). However, Kentucky courts "have determined that 'the long-arm statute within this jurisdiction allows Kentucky courts to reach the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants.'" *Wilson v. Case*, 85 S.W.3d 589, 592 (Ky. 2002) (quoting *Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 405 (Ky. App. 1984)). "In practice, the precise language of the statute and the application of its terms are much less important than the simple fact that the statute exists." *Id.*

There are several possible means by which this Court could assert personal jurisdiction over the Defendant. The Sixth Circuit has discussed the two alternatives in some detail:

> In analyzing the due-process limits of personal jurisdiction, a distinction is made between "general" jurisdiction and "specific" jurisdiction. See, e.g., *Burger King*

3

> *Corp. v. Rudzewicz*, 471 U.S. 462, 472 & 473 n.15 (1985). In a case of general jurisdiction, a defendant's contacts with the forum state are of such a "continuous and systematic" nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state. *See, e.g., Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952). In a specific jurisdiction case, "a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

*Third Nat'l Bank in Nashville v. Wedge Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). The Court will consider each possibility in turn.

A court may exercise "general jurisdiction" over a defendant where that defendant has "continuous and systematic" contacts with the forum state. *Id.* Where a nonresident "carries on substantial and more or less continuous business within a state it should reasonably expect to be required to defend actions in the courts of that state." *Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265, 1272 (6th Cir. 1984). However, the burden to establish general jurisdiction is quite high and generally requires the existence of "an office in the forum state" or other physical presence. *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir.1993). *See generally Kattula v. Jade*, No. 07-52, 2007 WL 1695669 at *4 (W.D. Ky. June 8, 2007). Here, Caesars' contacts with Kentucky certainly come close to being "continuous and systematic." Given Caesars' placement practically immediately adjacent to the largest metropolitan area in Kentucky, this does not come as a surprise. Caesars does carry on "substantial and more or less continuous" business with the state of Kentucky, but does not have any physical presence in the state. At this time, however, the Court is unwilling to conclude that it may exercise general jurisdiction over Caesars in all cases, but there is no question that the facts present a very close case for general jurisdiction.

The second way the Court could assert personal jurisdiction is via specific jurisdiction.

4

Under the applicable portion of Kentucky's long-arm statute, a court "may exercise personal jurisdiction over a person who acts directly . . . as to a claim arising from the person's . . . [t]ransacting any business in this Commonwealth." KRS § 454.210(2)(a)(1). The question, therefore, is whether Caesars transacts any business in the Commonwealth and whether Plaintiff's claim "arises" from that transaction. There is little question that Caesars transacts business in Kentucky. True, no Kentucky court has ruled one way or the other whether advertising alone would constitute transacting business in the state. However, the wide expanse of Caesars' activities in Kentucky – including but going beyond purely advertising – is strong evidence that the company does "transact business" in the state. The next question, therefore, is whether this claim "arises" from Defendant's transacting business in Kentucky. This inquiry is identical to that presented by the Due Process Clause's "minimum contacts" analysis, so the Court will now turn to that inquiry.

For the Court to assert personal jurisdiction over a non-resident defendant while comporting with the requirements of the Due Process Clause, the defendant must have "minimum contacts" with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). The Sixth Circuit has laid out a familiar three-part test for determining whether a non-resident defendant has had sufficient "minimum contacts":

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968) (footnote

omitted). First, there is no question that Caesars has purposefully availed itself of the privilege of acting in Kentucky. It has entered into numerous contracts in Kentucky. Its Kentucky contacts are not "random, fortuitous, or attenuated contacts," *Burger King*, 471 U.S. at 475 (internal quotations and citation omitted), but rather are the result of a concerted, sophisticated effort to woo Kentucky residents to visit Caesars in Indiana.

The second prong, like the second prong of the relevant portion of Kentucky's long-arm statute, asks whether the cause of action arises from the defendant's contacts in this state. This case is not a situation where two patrons came to Caesars for the first time and where it is unclear what motivated them (i.e. was it Caesars' advertisements, an Internet search, word of mouth, or something else?). In this case, Caesars' advertisements not only may have brought these patrons to the casino in the first place for their initial visit, but Caesars' continued direct mail and loyalty club relationships with Jayne and Burkhead ensured that the two would be repeat patrons.

These facts make this case distinguishable from *Brunner v. Hampson*, 441 F.3d 457 (6th Cir. 2006), on which Defendant rests its argument. In *Brunner*, a Canadian hunting outfitter advertised in Ohio and communicated with Ohio residents in booking a hunting trip that ultimately resulted in the injury of two of the plaintiffs and the death of the husband of a third. *Id.* at 459. The contacts involved "essentially consisted of communications that led to the hunters booking a trip to Canada." *Id.* at 464. The Sixth Circuit held that although a "'but for' relationship between the solicitation and the injuries clearly exists . . . one cannot reasonably say that the solicitations in Ohio were the proximate cause of the fire and explosion at the cabin in Canada." *Id.* at 466. Here, Caesars' relationship with Kentucky residents was much closer than that between the plaintiffs and defendants in *Brunner*, and involved a series of ongoing contacts

6

designed to encourage Burkhead and Jayne to frequent the casino more often. These contacts did not "cause" the accident in the traditional definition of that word, but their continuous and concentrated nature certainly ensured that Jayne and Burkhead would both be on State Road 111 on the night of September 8, 2004. The Kentucky Supreme Court, in conducting its "minimum contacts" analysis, has concluded that where a business "repeatedly and systemically did business with Kentucky . . . consumers," it is possible to conclude that the tort complained of "arises from" the defendant's activities in the state. *Wilson*, 85 S.W.2d at 595.

Another important factor distinguishes our case from *Brunner*. In *Brunner*, the Sixth Circuit was considering Ohio's long-arm statute, which has been interpreted *not* to extend to the full limits of due process. *Brunner*, 441 F.3d at 465 (citing *Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (1994)). The Kentucky Supreme Court, as discussed *supra*, has reached the opposite conclusion. *See Wilson*, 85 S.W.2d at 592. This difference could be quite significant. It is certainly reasonable enough not to apply *Brunner* directly to our case.

The third prong of the *Southern Machines* test asks whether "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machines*, 401 F.2d at 381. Caesars' contacts with Kentucky are frequent, significant, and systematic. Especially considering Caesars' close geographic proximity to Kentucky and its heavy reliance on Kentucky patrons, it is not unreasonable for Caesars to expect to be haled into court in Kentucky.

### III.

When facing a close personal jurisdiction case such as this one, it is important to remember the fundamental purposes behind the doctrine of "minimum contacts":

7

> The concept of minimum contacts . . . can be seen to perform two related, but distinguishable, functions. It protects the defendant against the burdens of litigating in a distant or inconvenient forum. And it acts to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system.

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980). Here, Defendant will not be litigating in a distant or inconvenient forum, nor will this Court, sitting in Kentucky, reach out beyond the limits imposed upon it by the concept of federalism. For all these reasons, the Court concludes that it may assert personal jurisdiction over Defendant.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant's motion to dismiss for lack of personal jurisdiction is DENIED.

cc:   Counsel of Record